IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WALTER M. FAIRMAN,

       Plaintiff,      Case No. 3:04 CV 7254

 -vs-

                 MEMORANDUM OPINION

KHELLEH KONTEH, et al.,

       Defendant.

KATZ, J.

  This matter is before the Court on Defendants' motion for summary judgment. (Doc. No. 34-1.) The Court extended Plaintiff's deadline to respond to Defendants' motion to January 27, 2006. *See* (Doc. No. 36.) Plaintiff filed a response on March 30, 2006, (Doc. No. 38) without requesting an extension or acknowledging that the response was over two months late. This Court has jurisdiction under 28 U.S.C. § 1331. For the reasons that follow, Defendants' motion is granted.

## BACKGROUND

  Plaintiff is a white male who was employed as a corrections officer with the Ohio Department of Rehabilitation and Corrections ("ODRC") from July 1998 until his termination on July 10, 2002. (Doc. No. 34-1.) Plaintiff initially worked at the Trumbull Correctional Institution, until his transfer to the Toledo Correctional Institution ("TCI") in the summer of 2000. (Doc. No. 34-1.) For the full duration of Plaintiff's employment at TCI, Defendant Konteh was its Warden. (Doc. No. 34-1.) Prior to his termination, Plaintiff received an oral warning in 2001 and a written reprimand on March 12, 2002. (Doc. No. 34-1.)

Plaintiff dated another TCI corrections officer, Cynthia San Pedro, from early 2001 until March 2, 2002. (Doc. No. 34-1.) On March 30, 2002, Plaintiff and San Pedro exchanged expletives with each other at roll call and Plaintiff punched San Pedro in the leg. Afterward, Plaintiff told San Pedro that she could "talk to them fucking niggers but not to me," in the presence of Lt. Pettaway, an African-American. (Doc. No. 34-1.) San Pedro filed an incident report; Plaintiff did not. (Doc. No. 34-1.)

Based on San Pedro's incident report, Plaintiff was placed on administrative leave and received a disciplinary hearing on May 24, 2002, at which Defendant Loreene Pettaway, Lt. Pettaway's cousin, served as hearing officer. (Doc. No. 34-1.) San Pedro and another corrections officer testified consistently with San Pedro's incident report. (Doc. No. 34-2.) Plaintiff testified on his behalf, but did not present any witnesses. (Doc. No. 34-2.) At the conclusion of the hearing, Defendant Pettaway found that Plaintiff had violated ODRC's Standards of Employee Conduct. As a result of Defendant Pettaway's finding and Plaintiff's prior discipline, Defendant Konteh terminated Plaintiff.

Plaintiff grieved his termination, pursuant to his Collective Bargaining Agreement, and received a hearing before a neutral arbitrator on March 23, 2003. (Doc. No. 34-2.) The arbitrator found that Plaintiff had violated Rules 18 and 19 of ODRC's Standards of Employee Conduct, and that removal was proper. (Doc. No. 34-2.) Plaintiff subsequently filed a complaint against Defendants Konteh and Pettaway for violation of his Fourteenth Amendment equal protection and due process rights, and against San Pedro for intentional interference with a business or contractual relationship. (Doc. No. 1-1.)

On March 23, 2005, this Court dismissed Plaintiff's intentional interference with a

business or contractual relationship claim against San Pedro. (Doc. No. 12.) On January 6, 2006, the remaining Defendants moved for summary judgment on Plaintiff's due process and equal protection claims. This Court granted had Plaintiff until January 27, 2006 to respond (Doc. No. 35). Plaintiff responded on March 30, 2006, without acknowledging the tardiness of his response or requesting an extension.

Plaintiff's response consists of: a short statement of facts; one-paragraph of argument by his attorney, in which counsel merely insists that there is a material issue of fact in this case; and Plaintiff's own affidavit. The fact statement and the affidavit relate only to an incident in which Plaintiff was issued an oral warning for requesting not to work with a supervisor who Plaintiff claims had a romantic interest in him, and Plaintiff's version of the incident between him and Officer San Pedro. Plaintiff's response does not cite to any evidence, admissible or otherwise, showing that Defendants treated differently non-white employees who were otherwise similarly situated to Plaintiff. Likewise, the response cites to no evidence relating to Plaintiff's hearing in front of Lorene Pettaway or his post-termination grievance and arbitration.[1]

## DISCUSSION

Plaintiff alleges three racially-motivated acts by Defendants Konteh and Pettaway: (1) Konteh's appointment of a hearing officer "whom he knew had a conflict of interest"; (2) Pettaway's failure to recuse herself as hearing officer in spite of the conflict; and (3) Plaintiff's termination. (Doc. No. 1-1.) Plaintiff contends that the first two acts violated the Fourteenth

---

[1] Even if Plaintiff's grossly untimely response had cited to relevant evidence or made competent legal arguments, which it does not, the Court would be inclined to disregard them and strike the filing as untimely, given Plaintiff's brazen and blatant disregard for this Court's rules and orders. However, because Plaintiff's "response" is irrelevant and ineffectual, the Court need not bother.

3

Amendment's Due Process Clause, and that all three violated its Equal Protection Clause. Because this Court finds that there is no genuine issue of material fact on either Plaintiff's equal protection or due process claims, it grants Defendants' motion for summary judgment.

A.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  There is a genuine issue of material fact if a reasonable jury "could return a verdict for the non-moving party." *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the opposing party must "set forth 'specific facts showing that there is a genuine issue for trial.'" *Farhat*, 370 F.3d at 587-88 (citing *Matsushita*, 475 U.S. at 587).  "All facts and inferences must be construed in a light most favorable to the party opposing the motion." *Zambetti v. Cuyahoga Cmty. College*, 314 F.3d 249, 255 (6th Cir. 2002) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The Federal Rules identify the penalty for the lack of . . . a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  This means that although the court must carefully review the evidence submitted by the movant, the trial court is not obligated to 'search the entire record to establish that it is bereft of a genuine issue of material

4

fact.'" *Levine v. Syms Corp.*, 982 F. Supp. 492, 495 (N.D. Ohio 1997) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). When a motion for summary judgment is unopposed, "in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence . . . in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 410 (6th Cir. 1992). Then, "[i]f such evidence supports a conclusion that there is no genuine issue of material fact, the trial court should determine that the moving party has carried its burden, and 'judgment [] shall be rendered forthwith.'" *Id.* (quoting FED. R. CIV. P. 56(c)).

B.  OFFICIAL CAPACITY CLAIMS

Plaintiff seeks damages and injunctive relief for Defendants' acts as individuals and as agents of the state. Under 42 U.S.C. § 1983, a plaintiff can only sue "persons" for damages, but a state employee "may be sued in his official capacity for prospective, injunctive relief." *Fisher v. Overton*, 124 Fed. App'x. 325, 328 (6th Cir. 2005) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)). Defendants argue that Plaintiff's official capacity claims against them as agents of the state must be dismissed "[b]ecause the relief sought by [Plaintiff] is not merely equitable and prospective," and ODRC and TCI are not "persons subject to suit under the statute." (Doc. No. 34-1.) This argument misconstrues the law. A plaintiff may seek damages against the individual defendants *and* injunctive relief against them as agents of the state in the same suit. *See id.* (stating that "state officials may continue to be sued in their official capacities even though they may be sued for damages only in their personal capacity") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)). Therefore, while Defendants are entitled to summary

5

judgment on any claims for damages against them in their official capacities, they are not entitled to summary judgment on Plaintiff's damages claims against them as individuals or on Plaintiff's claims for injunctive relief.

C. REVERSE RACE DISCRIMINATION CLAIM

Absent direct evidence, Plaintiff's § 1983 equal protection claim is analyzed using the traditional Title VII burden-shifting analysis. *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003). Under that framework, Plaintiff has "the initial burden of presenting a prima facie case of unlawful discrimination." *Johnson v. Kroger*, 319 F.3d 858, 866 (6th Cir. 2003) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000)). Plaintiff must show that the alleged discrimination was purposeful and intentional, and "that adverse employment decisions would not have been made but for [his] race." *Boggs v. Kentucky*, No. 95-6452, 1996 U.S. App. LEXIS 30331, at *9 (6th Cir. Nov. 20, 1996). If Plaintiff can establish a prima facie case, the burden shifts to Defendants to "'articulate some legitimate, nondiscriminatory reason' for taking the challenged action." *Johnson*, 319 F.3d at 866 (citing *Johnson*, 215 F.3d at 573). If Defendants are able to do so, "the plaintiff must then 'prove that the proffered reason was actually pretext to hide unlawful discrimination.'" *Id.* "The plaintiff may establish that the proffered reason was a mere pretext by showing that 1) the stated reason had no basis in fact; 2) the stated reason was not the actual reason; or 3) the stated reason was insufficient to explain the defendant's action. '[A] reason cannot be proved to be "a pretext for discrimination" unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 521 (6th Cir. 2002) (internal citation omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, (1993) (emphasis in original)).

6

Thus, this Court must first consider whether Plaintiff has set forth evidence to establish a prima facie case of reverse discrimination.

1. *Prima facie case*

To establish a prima facie case for race discrimination, generally, a plaintiff must show:

> (i) that he belongs to a racial minority; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 66-67 (6th Cir. 1985) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). In claims of reverse discrimination, courts have modified the *McDonnell Douglas* standard to require that a plaintiff show: (1) "that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority'"; and (2) "that the employer treated differently employees who were similarly situated but not members of the protected group." *Id.* at 67 (quoting *Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981)). Plaintiff has not set forth facts to show that there is a genuine issue for trial under either of these two prongs. Therefore, he has not met his burden of establishing a prima facie case of reverse discrimination.

(i) <u>Background circumstances</u>

Nothing in the record suggests that either Konteh or Pettaway discriminates against the majority. Plaintiff alleges two facts to suggest that Defendant Konteh generally discriminates against whites: (1) when an inmate filed a complaint referring to Konteh as "Nigger," Konteh signed his response "Head-Nigger-in-Charge"; and (2) Konteh is friendlier with the African-American employees than he is with Plaintiff. However, Plaintiff has not presented any evidence

7

in support of his allegations. The only evidence Plaintiff's response cites to is Plaintiff's own attached affidavit, which does not address the above allegations. In any event, even if Plaintiff had presented evidence to support these facts, this Court would not find that they support the conclusion that Konteh generally discriminates against whites.

Moreover, Plaintiff has not alleged or offered evidence to show that Defendant Pettaway generally discriminates against whites. Thus, Plaintiff has not met his burden of establishing that the Defendants are the unusual employers who discriminate against the majority.

(ii) <u>Disparate treatment</u>

For Plaintiff to show that Defendants Konteh and Pettaway treated him differently from other similarly-situated, non-white employees, he must demonstrate that "the individuals with whom [he] seeks to compare [his] treatment [] dealt with the same supervisor, [were] subject to the same standards and [] engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citing *Mazzella v. RCA Global Communications, Inc.*, 642 F. Supp. 1531 (S.D.N.Y. 1986)).

Plaintiff alleges that several non-white employees received lighter discipline for similar conduct, yet he has not identified a single instance where a non-white corrections officer with a similar disciplinary record, supervised by Konteh, received disparate discipline for a similar act. Plaintiff's claims of disparate discipline involve either different conduct against corrections officers, or similar conduct against inmates. Plaintiff's allegations are not substantiated, and most of them do not involve similarly situated employees under the *Mitchell* test. Moreover, in response to Defendants' motion, Plaintiff has identified no evidence supporting his claims. Thus,

8

Plaintiff has failed to meet his burden of demonstrating that he received disparate treatment.

### 2. *Legitimate, nondiscriminatory reason and pretext*

Plaintiff has not met his burden of establishing a prima facie case of reverse discrimination. Defendants have also articulated a legitimate, nondiscriminatory reason for firing him. On March 30, 2002, Plaintiff violated ODRC disciplinary rules 18 and 19 when he threatened and physically assaulted a fellow corrections officer. (Doc. No. 34-2.) Under the disciplinary guidelines, each violation is sufficient for removal. At Plaintiff's disciplinary hearing, two corrections officers presented unrefuted testimony to support the charges against him. (Doc. No. 34-2.) In light of Plaintiff's oral reprimand in 2001 and a written reprimand in 2002, Defendant Konteh terminated his employment. (Doc. No. 34-2.) Thus, Konteh had a legitimate, nondiscriminatory basis to terminate Plaintiff.

Plaintiff has failed to cite to evidence showing that Defendants' legitimate, non-discriminatory reasons for firing him were false. Likewise, he has presented no evidence upon which a reasonable jury could find that his termination was racially motivated. Therefore, Defendants are entitled to summary judgment on his reverse discrimination claim as a matter of law.

D.  DUE PROCESS CLAIM

Plaintiff claims that he was denied due process of law because his pretermination hearing officer, Defendant Pettaway, was not disinterested. Though such a claim implicates Plaintiff's procedural due process rights, Defendants moved for summary judgment on any potential procedural or substantive due process claim by Plaintiff.

1.  *Substantive due process*

9

"Absent the infringement of some 'fundamental' right . . . the termination of public employment does not constitute a denial of substantive due process." *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992). As explained above, Plaintiff has not presented evidence establishing the violation of a fundamental right. Therefore, he cannot prevail on a substantive due process claim as a matter of law.

    2.    ***Procedural due process***

Plaintiff claims that Defendant Pettaway's service as his hearing officer at his pretermination hearing violated his due process rights. Plaintiff claims that Defendant Pettaway was not disinterested because the disciplinary incident involved Plaintiff's reference to Defendant Pettaway's cousin as a "fucking nigger." (Doc. No. 1-1.) However advisable it may be to use an impartial hearing officer at a pretermination disciplinary hearing, it is not constitutionally mandated. "[I]n the pretermination stage, the employee does not have a right to, and the Constitution does not require, a neutral and impartial decisionmaker. . . . It is at the post-deprivation stage where a neutral decisionmaker is needed to adjudicate the evidence." *Farhat*, 370 F.3d at 595-96.

Following Plaintiff's termination, he filed a grievance and received a full hearing before a detached and neutral arbitrator. (Doc. No. 34-2.) The arbitrator found just cause for Plaintiff's termination and denied his grievance. (Doc. No. 34-2.) Since Plaintiff has claimed a right to which he is not entitled, his procedural due process claim also fails as a matter of law.

E.    QUALIFIED IMMUNITY

In evaluating the merits of a qualified immunity defense, this Court must consider: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional

10

right has been violated, and if so, (2) whether that right was clearly established. *Ciminillo v. Streicher*, No. 04-4346, 2006 U.S. App. LEXIS 1020, at *12 (6th Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "A necessary concomitant to the determination of whether the constitutional right asserted by Plaintiff is 'clearly established' at the time the defendant acted is the determination of whether Plaintiff has asserted a violation of a constitutional right at all." *Siegert*, 500 U.S. at 232. Where Plaintiff fails to assert conduct amounting to the violation of a constitutional right, qualified immunity exists. *Id*. at 232-33. Because this Court finds that there is no violation of Fairman's constitutional rights, Defendants Konteh and Pettaway are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, this Court grants Defendants' motion for summary judgment (Doc. No. 34).

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
SENIOR U. S. DISTRICT JUDGE